OMAHA PUBLIC POWER DISTRICT, A PUBLIC CORPORATION, APPELLANT, V. NATKIN & COMPANY, A CORPORATION, ET AL., APPELLEES.

226 N. W. 2d 864

Filed April 17, 1975. No. 39566.

L. J. Tierney and T. J. Stouffer of Cassem, Tierney, Adams & Henatsch, for appellant.

Joseph R. Moore, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

SPENCER, J.

This appeal is from the dismissal of a declaratory judgment action brought by Omaha Public Power District (OPPD) against Natkin & Company and its insurers, Royal Globe Indemnity Company and Globe Indemnity Company, to determine the rights of the parties under a contract. OPPD, acting as its own contractor, subcontracted with Natkin for the installation of certain piping and mechanical equipment in a new addition to its North Omaha power plant. Pursuant to the contract Natkin provided OPPD with a certificate of insurance from defendants Royal Globe and Globe Indemnity. A Natkin employee recovered a substantial judgment against OPPD for injuries sustained on the job. The question involved is whether the contract required Natkin to furnish insurance which covered this particular liability. We affirm.

The contract was drawn by OPPD. The only part involved herein is Article VI. This same provision was

in every one of the contracts OPPD made with its other subcontractors. It required Natkin to provide workmen's compensation insurance and public liability and property damage insurance that would protect both Natkin and OPPD from claims arising from the operation of the contract. The public liability and property damage provision, so far as material herein, reads as follows: "(b) Public Liability and Property Damage Insurance - The Contractor shall take out and maintain during the life of this Contract, such Public Liability and Property Damage Insurance as shall protect him and any subcontractor performing work covered by this Contract, and the District from claims for damages for personal injury, including wrongful death, as well as claims for property damages, which may arise from operations under this Contract, whether such operations be by himself or by any subcontractor, or anyone directly or indirectly employed by either of them. One (1) certificate of such insurance must be filed with the District."

OPPD received an insurance certificate certifying that the Royal Globe and the Globe Indemnity issued various policies to Natkin, including general liability coverage and automatic blanket contractual liability coverage. This certificate certified to the coverage afforded Natkin. OPPD was not included in the coverage. It was limited solely to Natkin. There is nothing in the record to indicate that OPPD questioned this certificate in any way before the action which is the basis for this proceeding. The contract provided: "3. INSURANCE - Contractor shall not commence work under this Contract until he has obtained all insurance required under this paragraph and such insurance has been approved by the District, nor shall the Contractor allow any subcontractor to commence work on his subcontract until all similar insurance required of the subcontractor has been so obtained and approved." OPPD was its own contractor and Natkin was a subcontractor on the project.

On February 9, 1967, Albert Simon, while working on the job as an employee of Natkin, carrying a pipe which was to be installed by Natkin, fell through an unguarded hole in the floor and was injured. The opening through which Simon fell was not fabricated by Natkin, nor was the floor on which he was walking prior to the fall. This work had been done by another subcontractor. Simon brought an action against OPPD for the injuries sustained. OPPD called upon Natkin and its insurers, Globe companies, to assume the defense of the claim. They declined. OPPD then defended the action and cross-claimed against Natkin for indemnity as to any amount adjudged against it in favor of Simon.

A jury trial resulted in a verdict against OPPD and specific findings that the negligence of OPPD and its architect was the proximate cause of the accident. The jury also specifically found that Natkin had not been negligent in any of the particulars set forth by OPPD. Simon v. Omaha P. P. Dist. (1972), 189 Neb. 183, 202 N. W. 2d 157.

OPPD instituted the present action, alleging that the contract required Natkin to provide it with insurance against claims such as those raised in the Simon case. Essentially, OPPD contends the contract required Natkin to furnish insurance covering claims against OPPD for OPPD's negligence. It further alleged that either Natkin had provided the insurance as required under Article VI and its insurers were liable to OPPD for the judgment and expenses incurred in its defense of the Simon case, or if Natkin had failed to provide OPPD with such coverage then Natkin itself would be liable to OPPD's insurer.

OPPD procured its own liability insurance. The record shows that it paid one-half of the Simon judgment and was reimbursed for this payment by its insurer, using the device of payment under a loan receipt. The judgment was against both OPPD and its architect.

The pleadings indicate the architect paid the other one-half.

The District Court dismissed OPPD's petition. It held that Article VI created an indemnity agreement between OPPD and Natkin. It further held Article VI lacked the express or clear and unequivocal language necessary to show the intention of the parties to require Natkin to indemnify OPPD against OPPD's own negligence, relying on Peter Kiewit Sons Co. v. O'Keefe Elevator Co., Inc. (1974), 191 Neb. 50, 213 N. W. 2d 731. In that case we held: "An indemnitee may be indemnified against his own negligence if the contract contains express language to that effect or contains clear and unequivocal language that that is the intention of the parties." The District Court further found there was no causal relationship between Simon's accident and the work performed under the Natkin contract. On appeal, OPPD challenges the District Court's findings: (1) That Article VI created an indemnity agreement rather than a contract to provide insurance; and (2) that Simon's injury did not arise from the operation of the contract.

In the view we take of the present action, it is not necessary to consider either of OPPD's two challenges to the findings of the District Court. Rather, we deal with OPPD's contentions that the contract required Natkin to furnish coverage for OPPD's negligence and that if it failed to do so, Natkin is the insurer.

The pertinent language of the contract is in subparagraph (b) set out heretofore. Natkin is referred to as the contractor, although in effect it was a subcontractor. Can this portion of the contract be construed to require Natkin to furnish liability insurance to OPPD, which would protect OPPD against its own negligence? Applying the test of Peter Kiewit Sons Co. v. O'Keefe Elevator Co., Inc., *supra*, to do so the contract must contain express language to that effect or contain clear

and unequivocal language to show that is the intention of the parties.

The contract provides: "The Contractor shall take out * * * Public Liability * * * Insurance as shall protect him and any subcontractor performing work covered by this Contract, and the District from claims for damages for personal injury, including wrongful death, * * * which may arise from operations under this Contract, whether such operations be by him or by any subcontractor, or anyone directly or indirectly employed by either of them." We must construe the word "subcontractor" as used in this context as any subcontractor specifically working under Natkin, and not to include all subcontractors who might be working under OPPD. The language of the contract is: "which may arise from operations under this contract." OPPD's contracts with other subcontractors would cover activities under their contracts.

Definitely the contract does not contain express language to the effect that Natkin would furnish insurance to cover OPPD's negligence. We then must consider whether or not the contract contains clear and unequivocal language that was the intention of the parties. Reading the language without analysis one might argue such coverage is afforded. At best, however, if that was the intention of the parties, it is ambiguous.

Analyzing the contract in this light, we are met with the reason for and operation of paragraph 3 set out above. It specifically provides that Natkin could not commence work until it obtained all the insurance required under the contract and until such insurance had been approved by OPPD. Natkin furnished OPPD with an insurance certificate to meet this provision of the contract. OPPD did not question the insurance coverage, but permitted Natkin to commence work on the project under the contract. This would indicate that OPPD approved the certificate as complying with the contract. If OPPD had questioned the insurance at

that stage, it could have prevented Natkin from commencing work until insurance satisfactory to it had been furnished.

At this late stage, it does not appear that Natkin has the insurance which OPPD now says is required by the contract. While OPPD does not agree, certainly the certificate of insurance in the file does not so indicate. The policies are not in evidence, so we must assume that the only insurance furnished pursuant to the contract is that covered by the insurance certificate.

OPPD now contends that the failure of Natkin to furnish the insurance required by the contract makes Natkin the insurer. In some situations that might be true. This, however, is not one of them even if OPPD's interpretation of the contract is the correct one.

OPPD argues the certificate of insurance furnished by Natkin covered all obligations undertaken by Natkin under the contract. It argues from this that the insurance companies are estopped to now contend there is no coverage for OPPD's negligence. The certificate plainly states that it is issued as a matter of information only and confers no rights on the holder and imposes no liability upon the insurance company. Natkin is the only named insured. We find no basis on which to interpret the contract in the light contended for by OPPD.

Returning to the effect of paragraph 3 of Article VI on the construction of subparagraph (b), we cannot ignore the fact that OPPD drew the contract. When there is a question as to the meaning of a contract, it is to be construed most strongly against the party preparing it. Abboud v. Cir Cal Stables (1973), 190 Neb. 396, 208 N. W. 2d 682. OPPD accepted the certificate Natkin provided and permitted Natkin to commence work in the belief that it had furnished the coverage required by the contract.

In the construction of questioned provisions in a contract, the rule has long been established in this jurisdiction that the interpretation given to a contract by

the parties themselves while engaged in the performance of it is one of the best indications of the true intent of the contract. Ordinarily, such a construction of the contract should be enforced. See Simon v. Omaha P. P. Dist. (1972), 189 Neb. 183, 202 N. W. 2d 157. This is a rule of justice and equity, and we apply it herein. To hold otherwise would permit OPPD to take advantage of its own omissions and permit it to interpret the contract of the parties contrary to its own actions.

While it is not necessary to consider the question of issue preclusion because it has not been raised by the briefs or the pleadings, we note that OPPD had only one possible cause of action against Natkin. This was its claim to indemnification, reimbursement, or to be insured for damages for failure to be insured. Its cross-action against Natkin in Simon v. Omaha P. P. Dist., *supra,* was premised on that cause of action. It was grounded on the contract, although on a different provision, but the end result sought here and there was the same. The precise issue it raises here could have been raised there. The rule is that where the second action is on the same cause of action and between the same parties as the first action, the judgment in the former action ordinarily is conclusive in the second action as to every question which was or might have been presented and determined in the former. State Fire Marshal v. Village of Dorchester (1973), 189 Neb. 464, 203 N. W. 2d 160.

For the reasons given, we affirm the judgment.

AFFIRMED.