MIKE ANDERSON, APPELLEE, V. NASHUA CORPORATION, DEFENDANT AND THIRD-PARTY PLAINTIFF, APPELLANT, AND LIBERTY MUTUAL INSURANCE COMPANY, DEFENDANT, AND W.S. BUNCH CO., A CORPORATION, ET AL., THIRD-PARTY DEFENDANTS, APPELLEES.

560 N.W.2d 446

Filed February 28, 1997.   No. S-95-248.

Jay L. Welch and Douglas E. Baker, of Welch, Wulff & Childers, for appellant.

David D. Ernst and Michael C. Pallesen, of Gaines, Mullen, Pansing & Hogan, for appellee W.S. Bunch Co.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, and GERRARD, JJ.

CONNOLLY, J.

We are asked to determine whether there exists a genuine issue of material fact as to whether a valid contract to provide insurance was created between appellant Nashua Corporation (Nashua) and appellee W.S. Bunch Co. (Bunch), in which Bunch agreed to provide liability insurance to protect Nashua against claims resulting from Nashua's own negligence.

We conclude that a valid agreement to provide insurance was created; however, the contract does not contain express or clear and unequivocal language that the parties intended for Bunch to provide liability insurance to protect Nashua against Nashua's own negligence. As a result, we affirm the Douglas County District Court's decision granting Bunch's motion for summary judgment.

## I. BACKGROUND

Nashua brought this third-party action against Bunch, its construction contractor, as part of an underlying action filed by Mike Anderson, a Bunch employee injured on Nashua's property within the scope of his employment. See *Anderson v. Nashua Corp.*, 246 Neb. 420, 519 N.W.2d 275 (1994). Liberty Mutual Insurance Company, Bunch's workers' compensation insurer, was joined in the action pursuant to its subrogation interests. Neb. Rev. Stat. § 48-118 (Reissue 1993).

Nashua operates a paper product manufacturing plant in Omaha, Nebraska. On the same tract of land, separate and apart from the plant, Nashua has underground storage tanks for chemicals used in its manufacturing process. Nashua hired Bunch to restore and paint the interior of the tanks. Anderson was severely injured when paint fumes ignited while he was painting.

A written contract between Nashua and Bunch provided that Bunch would do everything necessary for the restoration of the tanks, such as providing labor, materials, equipment, supervision, and direction. The contract, drafted by Nashua, further provided:

> 10. INSURANCE: If any work or services covered by this order, or any part thereof, are performed by Seller [Bunch] on Buyer's [Nashua's] property, *Seller shall carry at his own expense, sufficient public liability, property damage, employer's liability and compensation insurances, including motor vehicle liability insurance (both personal injury and property damage coverage) as will protect Seller (or its subcontractor) and Buyer from all risks and from any claims that may arise out of or pertain to the performance of such work or services,* including those coming under applicable Workmen's Compensation or occupational disease statutes. Insured amounts and insuring companies must be satisfactory to Buyer, and certificates of such coverage shall be submitted to Buyer prior to the start of any work or services pursuant to this order.

(Emphasis supplied.)

Bunch procured a liability insurance policy through United States Fidelity and Guaranty Company (USF&G). It is not disputed that Bunch began work before providing Nashua with a certificate of insurance. USF&G declined to defend or indemnify Nashua in the action brought by Anderson. Nashua then brought this third-party action against Bunch, alleging that Bunch breached its contractual obligation to purchase bodily injury liability insurance to effectively protect Nashua against claims resulting from Nashua's own negligence.

The district court for Douglas County granted Bunch's motion for summary judgment and overruled Nashua's motion for partial summary judgment. The district court determined that paragraph 10 of the contract constitutes an unenforceable contract of indemnification and not a valid contract to provide insurance, that the contract does not contain clear and unequivocal language that the parties intended there to be such insurance coverage, and that if Nashua was not satisfied with the insurance coverage obtained by Bunch, it should have prevented Bunch from beginning work on the project.

## II. ASSIGNMENT OF ERROR

Nashua alleges that the district court erred in holding that paragraph 10 of the contract between it and Bunch constituted an unenforceable contract of indemnification and not a valid contract to provide insurance.

## III. STANDARD OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Moulton v. Board of Zoning Appeals, ante* p. 95, 555 N.W.2d 39 (1996); *Polinski v. Omaha Pub. Power Dist., ante* p. 14, 554 N.W.2d 636 (1996).

The construction of a contract is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determinations made by the court below. *Daehnke v. Nebraska Dept. of Soc. Servs., ante* p. 298, 557 N.W.2d 17 (1996); *Stephens v. Radium Petroleum Co.*, 250 Neb. 560, 550 N.W.2d 39 (1996).

## IV. ANALYSIS

### 1. VALID CONTRACT TO PROVIDE INSURANCE

Nashua alleges that the district court erred in holding that paragraph 10 of the contract between it and Bunch constituted an unenforceable contract of indemnification and not a valid contract to provide insurance. Neb. Rev. Stat. § 25-21,187(1) (Reissue 1995) states:

In the event that a public or private contract or agreement for the construction, alteration, repair, or maintenance of a building, structure, highway bridge, viaduct, water, sewer, or gas distribution system, or other work dealing with construction or for any moving, demolition, or excavation connected with such construction contains a covenant, promise, agreement, or combination thereof to indemnify or hold harmless another person from such person's own negligence, then such covenant, promise, agreement, or combination thereof shall be void as against public policy and wholly unenforceable. *This subsection shall not apply to construction bonds or insurance contracts or agreements.*

(Emphasis supplied.)

In the instant case, the agreement to restore Nashua's tanks constitutes a private contract for the alteration, repair, or maintenance of a structure. We must determine whether the agreement requires Bunch to indemnify or hold Nashua harmless from Nashua's own negligence as prohibited by § 25-21,187 or whether the agreement requires Bunch to provide Nashua with liability insurance, in which case § 25-21,187 does not apply.

This court's only previous interpretation of § 25-21,187 was in *Hiway 20 Terminal, Inc. v. Tri-County Agri-Supply, Inc.*, 232 Neb. 763, 443 N.W.2d 872 (1989). The clause in the subcontract agreement at issue in *Hiway 20 Terminal, Inc.*, provided in pertinent part:

"The Subcontractor agrees to indemnify and save harmless the Contractor from any and all loss or damage . . . occasioned wholly or in part by any negligent act or omission of the Subcontractor or that of anyone directly or indirectly employed by them or performing the work of this Subcontractor under the direction of the Subcontractor or anyone for whose acts any of them may be liable in carrying out the provisions of the general contract and of this Subcontract regardless of whether or not it is caused in part by a party indemnified hereunder."

(Emphasis supplied.) *Id.* at 768, 443 N.W.2d at 875.

This court held that "the final clause in this agreement, stating that the subcontractor must indemnify the general contrac-

tor even if the harm is caused by the negligence of the general contractor, is clearly invalid by application of § 25-21,187." *Id.*

However, the instant agreement is distinguishable from the agreement held invalid in *Hiway 20 Terminal, Inc.* The *Hiway 20 Terminal, Inc.*, agreement did not require the subcontractor to provide liability insurance for the general contractor but, instead, required the subcontractor to indemnify the general contractor for harm caused by the general contractor's own negligence. Conversely, the instant agreement did not require Bunch to indemnify Nashua for harm caused by Nashua's own negligence but, instead, required Bunch to provide Nashua with liability insurance.

Thus, we determine that § 25-21,187 does not render the instant agreement invalid because its exception for insurance agreements is applicable. As a result, we conclude that the district court erred in holding that paragraph 10 of the contract constituted an unenforceable contract of indemnification and not a valid contract to provide insurance.

### 2. EXPRESS OR CLEAR AND UNEQUIVOCAL LANGUAGE

Although a valid contract was created in which Bunch agreed to provide Nashua with liability insurance, we must next determine whether the contract requires the liability insurance to include coverage for harm caused by Nashua's own negligence. An indemnitee may require another to insure losses incurred by reason of his or her own negligence if the contract contains express language to that effect or contains clear and unequivocal language that that is the intention of the parties. See, *Oddo v. Speedway Scaffold Co.*, 233 Neb. 1, 443 N.W.2d 596 (1989); *Omaha P. P. Dist. v. Natkin & Co.*, 193 Neb. 518, 227 N.W.2d 864 (1975); *Peter Kiewit Sons Co. v. O'Keefe Elevator Co., Inc.*, 191 Neb. 50, 213 N.W.2d 731 (1974).

In *Omaha P. P. Dist., supra*, we applied the express or clear and unequivocal language requirement to determine whether an agreement to provide liability insurance included coverage for the insured's own negligence. Thus, we must determine whether the contract contains (1) express language requiring Bunch to provide Nashua with liability insurance that includes coverage for harm caused by Nashua's own negligence or (2) clear and

unequivocal language that the parties intended for there to be such coverage.

(a) Express Language

In *Omaha P. P. Dist.*, the agreement to provide insurance stated in pertinent part:

> "The Contractor [Natkin] shall take out and maintain during the life of this Contract, such Public Liability and Property Damage Insurance as shall protect him and any subcontractor performing work covered by this Contract, and the District [Omaha P. P. Dist. (OPPD)] from claims for damages for personal injury, including wrongful death, as well as claims for property damages, which may arise from operations under this Contract, whether such operations be by himself or by any subcontractor, or anyone directly or indirectly employed by either of them."

*Id.* at 520, 227 N.W.2d at 866.

This court held that "[d]efinitely the contract does not contain express language to the effect that Natkin would furnish insurance to cover OPPD's negligence." *Id.* at 523, 227 N.W.2d at 868. As in *Omaha P. P. Dist.*, we determine that the contract in the instant case does not contain express language to the effect that Bunch would furnish insurance to cover harm caused by Nashua's own negligence.

(b) Clear and Unequivocal Language

After concluding that the contract did not contain express language requiring Natkin to furnish insurance to cover OPPD's own negligence, the court in *Omaha P. P. Dist.*, 193 Neb. at 523, 227 N.W.2d at 868, stated: "We then must consider whether or not the contract contains clear and unequivocal language that was the intention of the parties. Reading the language without analysis one might argue such coverage is afforded. At best, however, if that was the intention of the parties, it is ambiguous."

Conversely, in *Oddo*, 233 Neb. at 9, 443 N.W.2d at 602, this court held:

> Although the lease's indemnity clause does not contain the word negligence, the intended consequence of indemnity is expressed clearly and unequivocally—Contractor [Oddo] was obligated to indemnify Speedway concerning

claims arising from Speedway's conduct, including negligence, but excluding claims based on Speedway's willful misconduct.

(Emphasis omitted.)

In *Oddo*, the indemnity clause in the lease provided that Oddo would indemnify Speedway for claims arising out of Speedway's

"conduct (including active, passive, primary or secondary)." In addition, the clause stated that the *"lessor [Speedway] shall only be liable or responsible for actions of wilful misconduct."* Finally, the lease declared that the purpose of the indemnity clause was "to shift the risk of all claims relating to the leased property to the lessee during the entire term of this lease."

(Emphasis omitted and supplied.) *Id.*

Thus, we must determine whether the contractual language in the instant case is more like the language determined to be not clear and unequivocal in *Omaha P. P. Dist., supra,* or more like the language determined to be clear and unequivocal in *Oddo, supra.*

The contractual language stating that Bunch shall carry sufficient insurance that will protect Nashua from "all risks and from any claims that may arise out of or pertain to the performance of such work" is similar to the "claims for damages for personal injury, including wrongful death, as well as claims for property damages, which may arise from operation under this [c]ontract" language found to be not clear and unequivocal in *Omaha P. P. Dist v. Natkin & Co.*, 193 Neb. 518, 227 N.W.2d 864 (1975). Furthermore, unlike the language found to be clear and unequivocal in *Oddo v. Speedway Scaffold Co.*, 233 Neb. 1, 443 N.W.2d 596 (1989), nowhere is it stated that Nashua "shall only be liable or responsible for actions of wilful misconduct." Moreover, when there is a question as to the meaning of a contract, it is to be construed most strongly against the party preparing it, in this case, Nashua. See, *Omaha P. P. Dist., supra*; *Peter Kiewit Sons Co. v. O'Keefe Elevator Co., Inc.*, 191 Neb. 50, 213 N.W.2d 731 (1974). Thus, if the parties intended for Bunch to provide liability insurance to protect Nashua against

Nashua's own negligence, we determine that intention is not expressed or clear and unequivocal as a matter of law.

## V. CONCLUSION

We conclude that a valid agreement to provide insurance was created; however, the contract does not contain express or clear and unequivocal language that the parties intended for Bunch to provide liability insurance to protect Nashua against Nashua's own negligence. As a result, we affirm the Douglas County District Court's decision granting Bunch's motion for summary judgment.

AFFIRMED.